FILED
SUPERIOR COURT
OF GUAM

2026 MAY -1 PM 4: 10

CLERK OF COURT

By:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| L.A., a person with a disability by and through her parent, and G.D., a minor person with a disability by and through his parent, <br><br> Plaintiffs, <br><br> vs. <br><br> KENNETH ERIK SWANSON, Ph.D., in his official capacity as Superintendent, Guam Department of Education, et al., <br><br> Defendants. | CIVIL CASE NO. <u>CV0464-23</u> <br><br> **DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES** |

Plaintiffs L.A. and G.D., through counsel Guam Legal Services Corporation-Disability Law Center (GLSC), move for attorneys' fees and costs after partially prevailing on claims against the Guam Department of Education's Superintendent and board members (GDOE). Upon consideration of the parties' briefs and arguments, and review of GLSC's timesheets and accounting, the Court awards $292,151.35 in fees and costs, reflecting L.A. and G.D.'s success on significant issues in the litigation.

## I.  BACKGROUND

GLSC operates as a nonprofit organization that provides free legal services to people with disabilities through federal grants. GLSC charges clients nothing. Hr'g at 09:45 (Nov. 24, 2025).

GLSC initiated this action on behalf of GDOE students, L.A. and G.D., on August 11, 2023. Compl. Decl. and Inj. Relief (Aug. 11, 2023). They alleged that GDOE violated their

ORIGINAL

rights under the Organic Act and the Every Child is Entitled to an Adequate Public Education Act (Adequate Education Act) due to a lack of certified special education teachers, unsafe and unhealthy learning environments, and mold in classrooms. *Id.*

Before the Court could hear L.A. and G.D.'s early request for a preliminary injunction, the case stalled for eight months while the parties debated whether the Office of the Attorney General (OAG) or GDOE's legal counsel should represent GDOE. Order Show Cause for Prelim. Inj. (Aug. 25, 2023); Joseph A. Guthrie & Fred S. Nishihira's Mot. Withdraw as Counsel (Sept. 18, 2023); Def. GDOE's Resp. to Pls.' Mot. Disqualify (Oct. 18, 2023). The Court eventually ruled that the OAG had no conflict of interest in representing GDOE. Order (Jan. 17, 2024). Nonetheless, representation issues persisted until GDOE's legal counsel overtook full representation in April 2024. Not. Substitution Counsel (Feb. 5, 2024); Order re Second Mot. Putative Counsel to Withdraw as Counsel (Apr. 5, 2024).

The litigation then proceeded with motions, discovery, and hearings. On January 22, 2024, Plaintiffs filed a second amended complaint adding eight plaintiffs—other students within GDOE seeking similar relief. Second Am. Compl. Decl. Inj. Relief (Jan. 22, 2024). GDOE moved the Court to reconsider its decision allowing the amended complaint, even though it had not originally opposed the amendment. Stmt. Non-Opp'n Mot. Amend First Am. Compl. (Jan. 17, 2024); Def.'s Mot. Recons. Second Am. Compl. (Jan. 23, 2024). The Court denied the motion to reconsider. Dec. & Order Den. Mot. Recons. (Mar. 8, 2024).

The Court reissued an Order to Show Cause and set the preliminary injunction hearing for April 22, 2024. Am. Order Show Cause (Feb. 19, 2024). At that hearing, after GDOE's Superintendent began his testimony, GDOE's objections to the examination questions alerted the Court to jurisdictional issues that required disposition. The Court halted the preliminary



injunction hearing to allow the parties to brief these issues. *See* Order re Juris. & Standing Issues (Apr. 23, 2024).

The Court then resolved a number of GDOE's jurisdictional objections in its September 10, 2024 Decision and Order Granting Motions to Dismiss. The Court determined that: (1) the eight additional plaintiffs failed to exhaust their administrative remedies; (2) although the plaintiffs also had a constitutional right to an adequate education, they still had to exhaust their administrative remedies; (3) the eight additional plaintiffs did not exhaust such administrative remedies vicariously through either L.A. or G.D.; (4) G.D. filed an administrative claim in compliance with the Government Claims Act and Adequate Education Act; and (5) the Court could issue injunctive relief when necessary to prevent a multiplicity of judicial proceedings. Dec. & Order Granting Mots. Dismiss (Sep. 10, 2024).

Next, the Court heard and tackled three motions and cross-motions for summary judgment. On May 6, 2025, the Court determined: (1) L.A. and G.D.'s claims complied with the Adequate Education Act; (2) the Court had the ability to issue declaratory relief even if injunctive relief was no longer available; (3) there were issues of fact regarding the presence and effect of mold at L.A. and G.D.'s schools; (4) L.A. was not entitled to declaratory or injunctive relief with respect to her school, Agueda I. Johnston Middle School (AIJMS); (5) G.D. was entitled to declaratory relief as to unsanitary conditions at Oceanview Middle School (OMS); (6) L.A. was entitled to declaratory relief because GDOE violated the Adequate Education Act when it failed to provide her with a certified teacher. Dec. & Order re Summ. J. Mots. (May 6, 2025).

To be clear, the Court's findings indicate that, while the litigation was ongoing, GDOE violated the Adequate Education Act by operating both AIJMS and OMS under expired or failing health inspection grades, and by failing to provide L.A. a certified teacher on at least 29



occasions during one school year. *Id.* By the time of the Decision and Order, however, both schools had passed inspection, and GDOE had provided L.A. with a certified teacher. These cures were sufficient to circumvent an order for injunctive relief.

The Court then scheduled the matter for trial on the issue of mold in the schools. At the Pretrial Conference, the parties announced a stipulation that at the time L.A. and G.D. filed this case, AIJMS and OMS both had mold, and that mold is unhealthful for students. Hr'g (July 31, 2025). The Court found this resolved the last outstanding issue and issued a Judgment on all claims. J. (Aug. 18, 2025).

L.A. and G.D. now move to recover their attorneys' fees and costs. Mot. Award Att'y Fees & Costs (Sep. 2, 2025). They seek: (1) an attorneys' fee award of $553,500 for 2,214 hours of work at $250 per hour; (2) $42,180 in paralegal costs for 703 hours of paralegal work at $60 per hour; (3) process server fees of $3,050; and (4) deposition/transcriber fees of $12,194.48. In their opposition, GDOE argues the American Rule applies; L.A. and G.D. did not obtain injunctive relief; GLSC is not entitled to attorneys' fees because it did not charge its clients; and GLSC did not justify its hours or its rate. Def.'s Opp'n to Pls.' Mot. Award Att'y Fees & Costs (Oct. 2, 2025). The Court heard arguments on October 30 and November 24, 2025.

## II.   ATTORNEYS' FEES DISCUSSION

### A. Attorneys' Fees Are Not Limited to Injunctive Relief

GDOE argues that because the Court did not grant injunctive relief specifically, L.A. and G.D. cannot receive an award of fees. However, the Adequate Education Act does not limit litigants to injunctive relief. It authorizes a civil action for "injunctive relief, mandate, prohibition or other legal remedy but not money damages on behalf of a public school student to secure or maintain the public school student's right to an adequate public education . . . ." 19

ORIGINAL

GCA § 1116(b). The statutory framework thus plainly permits parties to pursue legal remedies, such as declaratory judgments, alongside injunctive relief to ensure that GDOE furnishes an adequate education. Notably, Guam's declaratory judgments statute similarly says that "Any person . . . may ask for a declaration of rights or duties, either alone or with other relief." 7 GCA § 26801.

Beyond section 1116, the Adequate Education Act grants students standing "only for the purpose of enjoining such officer from failing to provide an adequate public education . . . but not for money damages." 7 GCA § 12108.1(a). This reflects a threshold limitation on who may sue, not a limitation on the forms of non-monetary relief available once standing exists.

GDOE identifies injunctions as a "main issue" in the Act; notably, however, L.A. and G.D. sought such relief in their Complaint and as the statute requires to satisfy standing. Without seeking injunctive relief, L.A. and G.D. would not have had standing to bring this case, or the declaratory relief they also sought. GDOE errs, however, by conflating this "main issue" for standing with the "significant issue" standard courts apply to fee awards. *See, e.g., Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (a "significant issue" defines a prevailing party by the benefit achieved through suing). Plaintiffs' claims for both injunctive and declaratory relief qualify as significant issues because Plaintiffs obtained meaningful benefits, even though this Court denied injunctive relief as procedurally unnecessary once GDOE cured the underlying violations. Also, the Adequate Education Act does not limit fee awards to injunctive relief; it identifies the purposes for which students may sue and excludes only monetary damages. This Court's view is the same as it has always been on this matter: declaratory relief is available, and it can be granted in addition to other remedies, including alongside attorneys' fees. Dec. & Order Granting Mot. to Dismiss; Dec. & Order re Summ. J. Mots. at 10.


ORIGINAL

Attorneys' fees, moreover, do not constitute "monetary damages" barred by section 12108.1. Fees are distinct from damages. *See, e.g., Fleming v. Quigley*, 2003 Guam 4 ¶ 35 (fees qualify as damages only under a third-party tort exception to the American Rule); *Pulliam v. H.N.L. Auto. Inc.*, 293 Cal. Rptr. 3d 649, 659, (Cal. 2022) (fees for bringing action constitute costs, not damages); *Java Oil Ltd. v. Sullivan*, 86 Cal. Rptr. 3d 177, 186 (Ct. App. 2008) (fees recoverable as damages only in malicious prosecution context). This conclusion is reinforced by 7 GCA § 26603.1, in which the Legislature overrode the American Rule and expressly permitted courts, in their discretion, to award the prevailing party reasonable attorney's fees as part of the costs in any action to enforce the Adequate Education Act. *See also Villagomez-Palisson v. Super. Ct.*, 2004 Guam 13 ¶ 26 n.5 ("it is within the legislature's authority to provide for fee-shifting").

In summary, both L.A. and G.D. sought and obtained declaratory relief, entitling them to fees upon prevailing. Also, even assuming arguendo that the Adequate Education Act required injunctive relief for fee eligibility, Plaintiffs satisfy that condition. They initially sought such relief when neither school held passing sanitary grades—conditions that persisted for up to a year after filing. Dec. & Order re Summ. J. Mots. at 13–14. GDOE's later cures secured the benefits Plaintiff pursued. Plaintiffs therefore qualify for fees under the Adequate Education Act if they are prevailing parties, which this Court assesses next.

## B. Plaintiffs Qualify as Prevailing Parties

The Guam Supreme Court has set forth a test to determine whether a party has prevailed:

> We believe the better rule to be one which requires the trial court to look at the lawsuit as a whole to determine which party, if any, prevailed. The recovery of a net judgment is but one of several factors for the trial court to consider, others being whether the party prevailed on any significant issue in litigation, and the


ORIGINAL

proportion between what was sought by the party and what was actually recovered.

*Rahmani v. Park,* 2011 Guam 7 ¶ 64. Federal cases similarly look at whether a party "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar,* 506 U.S. at 109 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). Plaintiffs need not prevail on every claim but must secure "some relief" that "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar,* 506 U.S. at 111–13 (summarizing *Hewitt v. Helms,* 482 U.S. 755, 760–61 (1987)). Also, a party that solely obtains declaratory relief may qualify as "prevailing," as noted by Justice Antonin Scalia:

> In all civil litigation, the judicial decree is not the end but the means. At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces . . . . This is no less true of a declaratory judgment suit than of any other action. The real value of the judicial pronouncement—what makes it a proper judicial resolution of a "case or controversy" rather than an advisory opinion—is in the settling of some dispute which affects the behavior of the defendant towards the plaintiff. . . . Likewise in a declaratory judgment action: if the defendant, under pressure of the lawsuit, alters his conduct (or threatened conduct) towards the plaintiff that was the basis for the suit, the plaintiff will have prevailed.

*Hewitt,* 482 U.S. at 761.

In this matter, the judgment materially altered the parties' legal relationship. First, the Court established that, "for purposes of the Adequate Education Act, a school is in compliance with the Act's requirements for a healthful, safe, and sanitary environment when it holds a passing inspection grade." Dec. & Order re Summ. J. Mots. at 13. Before the Court's Decision, GDOE operated both schools in violation of the Act without recourse: AIJMS operated for a year and three months with an expired sanitary permit; meanwhile, for more than a year and a


ORIGINAL

half, OMS operated with a D or failing grade. *Id.* at 5-6. The Decision and Order now instructs

GDOE and informs L.A. and G.D.—who still attend GDOE schools—on the minimal

requirements for maintaining a healthful and safe environment.

Second, the Court declared that GDOE violated the Act by failing to provide L.A. with a

certified teacher. In this, L.A. achieved a significant victory through a declaratory judgment.

Prior to the Court's Decision and Order, GDOE believed it was adequate not to give her certified

teachers if her certified teacher was absent for a multitude of reasons. *Id.* at 3 (reiterating

GDOE's position allowing no teacher due to jury duty, training, and medical reasons). The

Court's Decision rejects these excuses and enforces the plain language of the Adequate

Education Act. *Id.* at 16-18.

Third, the litigation concluded with GDOE stipulating that mold existed at both schools

right after the suit was filed and that mold is unhealthful. Hr'g (July 31, 2025). GDOE itself

consented to declaratory relief relative to mold. Courts may consider a party to a settled issue to

have prevailed if, again, the legal relationship is altered. *See E.S. ex rel. Mr. S. v. Ashford Bd. of

Educ.*, 134 F. Supp. 2d 462, 467 (D. Conn. 2001). Here, the Court finds that GDOE's concession

altered the legal relationship, as GDOE had previously contended that the presence of mold in

schools did not violate the Adequate Education Act. Defs.' Trial Brief (July 3, 2025).[1]

Given these three examples of significant issues—the standards for healthful, safe, and

sanitary school environments, the provision of certified teachers, and the elimination of mold—

---

[1] GDOE contends it never stipulated that it violated the Adequate Education Act because schools were not yet open on August 18, 2023–the date it agreed the schools had mold. Def.'s Opp'n to Pls.' Mot. Award Att'y Fees & Costs at 6 n.3. The Court does not find this distinction persuasive. GDOE's acknowledgement that harmful mold existed in the schools reflects a condition inconsistent with the Adequate Education Act's mandate to provide a safe and adequate educational environment.

ORIGINAL

the Court finds that through a Declaratory Judgment, GDOE's legal relationship relative to L.A. and G.D. has been altered.

The Court briefly turns to GDOE's contention that the Court focus on the language in *Rahmani* regarding "proportionality," claiming that weighing the parties' respective victories in proportion to each other bars Plaintiffs' prevailing-party status. Def.'s Opp'n to Pls.' Mot. Award Att'y Fees & Costs at 3 (quoting *Rahmani*, 2011 Guam 7 ¶ 64). This is a simplistic "scorekeeper" approach—tallying motions won (e.g., 25 claims versus 2) and ignoring intangible benefits or the relief actually sought. Def.'s Opp'n to Pls.' Mot. Award Att's Fees & Costs at 5–8. Such mechanical counting disregards the underlying plea for changed circumstances, transforms litigation into a game, and contradicts *Rahmani*'s holistic mandate. Moreover, GDOE's method is inaccurate: this Court has already found at least 29 violations in a single claim alone. Dec. & Order re Summ. J. Mots. at 17.

Instead, viewing the lawsuit as a whole, as *Rahmani* requires, tips the balance toward L.A. and G.D. GDOE's cures delivered the core benefits L.A. and G.D. sought by addressing certified-teacher shortages and the unsanitary conditions that underlay their Complaint.

## C. GLSC May Recover Fees Despite Waiving Client Charges

Nonprofit legal services organizations like GLSC qualify for attorneys' fees when their clients prevail, even if counsel charged no fees to those clients. Courts uniformly hold that counsel providing pro bono or nonprofit services is entitled to recover fees upon client success. For instance, the Ninth Circuit awarded fees to a legal aid organization representing a prevailing Truth in Lending Act plaintiff. *Kessler v. Assocs. Fin. Servs. Co. of Haw., Inc.*, 639 F.2d 498, 500 (9th Cir. 1981). The California Court of Appeal similarly upheld fees for a legal services group challenging welfare regulations. *Horn v. Swoap*, 116 Cal. Rptr. 113, 118–119 (Ct. App.


ORIGINAL

1974). Other courts follow suit across contexts. *See Bisson v. Ward*, 628 A.2d 1256 (Vt. 1993); *Jordan v. City of Greenwood, Miss.*, 808 F.2d 1114 (5th Cir. 1987). Reasonable attorney's fees are awarded based on the value of the legal services rendered, not on whether counsel billed the client directly.

GLSC qualifies for fee recovery here. As a nonprofit organization, GLSC provided services to L.A. and G.D. at no charge. Its billing records demonstrate a substantial investment of time in litigating this Adequate Education Act enforcement action against GDOE, applying the attorneys' combined expertise to novel claims under the Act.

Citing language in *Hensley* that "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust," GDOE asks the Court to find that GLSC's representation constitutes an unjust "special circumstance." 461 U.S. at 429. However, GDOE provides the Court with no authority equating the use of a non-profit legal services provider with an unjust award. To the contrary, the "special circumstances" exception is extremely narrow—a reflection of the policy that prevailing plaintiffs in civil rights cases pursue worthy causes and should be protected.[2] *Saint John's Organic Farm v. Gem Cty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1064 (9th Cir. 2009); *Hueble v. S.C. Dept. of Nat. Res.*, 785 S.E.2d 461, 467 n.7 (S.C. 2016) (listing examples of "special circumstances" to include failure to keep reliable time records or untimely application for fees).

Students' use of a nonprofit legal organization to advocate for corrections of Adequate Education Act violations is not a special circumstance that merits denying fees; to the opposite, seeking such representation might be the students' only avenue for vindicating their

---

[2] Under the Adequate Education Act, the right to an adequate public education is analogous to a constitutional civil right. Pub. L. 28-45:3.


ORIGINAL

constitutional and statutory rights and fulfilling the Legislature's directive that their education be adequate. To put this in perspective, it seems the Court must remind GDOE that we are talking about middle school students with disabilities. It is reasonable to assume they have no income to pay attorneys, let alone the wherewithal on how to retain one. Nor would they, without adequate legal representation, be able to navigate the dual claim process under the Adequate Education Act and the Government Claims Act—a procedure that even L.A. and G.D.'s experienced attorneys failed to do correctly for the eight additional students. Dec. & Order Granting Mots. Dismiss at 5-7. Beyond those processes, the Court does not reasonably expect students (let alone middle school students with disabilities) or their parents to initiate and sustain court litigation against GDOE and its cadre of in-house paid attorneys without legal assistance.

GDOE's suggestion that a nonprofit organization is somehow less deserving of compensation—should its clients prevail—exposes a fundamental misunderstanding of the statutes governing fee awards and the purpose those awards serve. Nonprofit legal services exist precisely because the individuals they represent cannot afford private counsel. Their nonprofit status does not diminish the quality of representation they provide, the necessity of the work they perform, or the resources they must expend to litigate a case effectively. To the contrary, these organizations often shoulder significant burdens to ensure that vulnerable parties—such as the students in this matter—are not shut out of the courthouse solely because of their financial circumstances.

Also, fee-shifting statutes exist to deter unlawful conduct. Stripping nonprofit counsel of fee eligibility blunts that deterrent, incentivizes unlawful behavior by deep-pocketed defendants, and punishes the very organizations that make access to justice meaningful.



The Court therefore rejects any premise that a nonprofit legal organization's representation conditions the validity of a fee request. To hold otherwise would embolden GDOE to violate students' rights, secure in the knowledge that the very organizations designed to protect those students would be financially incapacitated from doing so.

### D.  GLSC's $250 Hourly Rate is Reasonable

Next, the Court examines if GLSC's requested $250 hourly rate aligns with prevailing community rates for comparable services in Guam. Courts determine reasonable rates by reference to those prevailing in the community, "regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). A $250 rate qualifies as reasonable here, given the decades of experience by both counsel. Joint Decl. ¶ 5 (Sept. 2, 2025) (GLSC attorneys count over 70 years of practice); *Matter of Guardianship of Moylan*, 2022 Guam 10 ¶ 45 ("we do not find the $300 rate unreasonable"); *Palmer v. Mariana Stones Corp.*, Civ. Case No. CV0709-13 (Dec. & Order at 12 (Dec. 17, 2018)) (approving rates between $200 and $400). GLSC's $250 request remains below typical rates for legal work on Guam and therefore satisfies the Court.

### E.  Calculation of Fees

Having resolved that L.A. and G.D. are partially prevailing parties and GLSC may recover fees at its proposed rate, the Court now examines the appropriate award. In calculating a reasonable fee, a court typically multiplies a reasonable hourly rate by the number of hours reasonably expended. *See e.g., Matter of Guardianship of Moylan*, 2022 Guam 10; *Hensley*, 461 U.S. at 433. The U.S. Supreme Court has held that in complex civil rights cases involving multiple claims, parties and defenses, and where parties have only partially prevailed, "[t]here is no precise rule or formula." *Hensley*, 461 U.S. at 436. The trial court has two main options: it



"may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id*. at 436-37.

The Court finds that it would be impossible to try to parse out what has been reasonably billed among the more than 2,200 hours and hundreds of time entries submitted by GLSC. The various issues throughout the litigation and for each of GLSC's ten clients are not delineated in the time entries, nor does the Court expect them to be given the commonality and overlap between claims and defenses. The Court has also considered dividing the matter into phases (initial complaint, dispositive motions, post-dismissal of eight plaintiffs, and work up to the mold trial), but the issues L.A. and G.D. prevailed on are intertwined with issues they did not prevail on at most of those stages. The Court also notes GLSC's quarter-hour billing practice, which may somewhat overstate time spent on smaller tasks. The Court does not assign a separate mathematical reduction on that basis, but considers it as an additional factor supporting an overall across-the-board reduction.

Based on the overall circumstances of this case, the Court determines the appropriate approach is to award L.A. and G.D. half of all attorney's fees incurred by GLSC. This methodology takes into account GDOE's substantive victories in dismissing the claims of the eight additional plaintiffs and avoiding injunctive relief by curing the Adequate Education Act violations. At the same time, it recognizes Plaintiffs' substantial success in improving the healthful environments of their schools by litigating the standard for such environments, obtaining GDOE's concession as to the presence of harmful mold, and guaranteeing the presence of a certified teacher for L.A.

Accordingly, given the totality of the parties' efforts and outcomes, the Court awards L.A. and G.D. half of the attorney's fees sought, for a total fee award of $276,750.00.



A fifty-percent award is not uncommon in analogous federal cases. In *McCallister v. Dist. Columbia*, 21 F. Supp. 3d 94 (D.D.C. 2014), for example, special education students received partial success on their individual claims. The Court ruled that a 50% across-the-board reduction, rather than a claim-by-claim analysis, better reflected how "a certain amount of work performed in any case is performed for all claims, and cannot be so easily sub-divided." *Id.* at 103–04. In another case, *E.S. ex rel. Mr. S.*, 134 F. Supp. 2d 462, a disabled student and the defendant school board settled the student's claims over the school's failure to conduct a special education assessment. As part of the settlement, the student participated in developing regulations governing administrative due process hearings for students' claims. The court determined that this limited success merited a 50% reduction in a fee award. *Id.* at 470.

To be clear, this Court is not adopting a 50% reduction based on any similarity between the Adequate Education Act and comparable federal laws. The Court has adopted an overall reduction of fifty percent because of the inability to segregate L.A. and G.D. attorneys' successful efforts from those in which they did not prevail. Ultimately, the relief they did achieve was substantial enough to merit an award of $276,750.00, which this Court finds reasonable given the scope of the issues presented in this case.

## III.    PARALEGAL FEES DISCUSSION

GLSC employed seven paralegals to assist them in pursuing this matter. It seeks an award of 703.00 hours at an hourly rate of $60.

Relying on federal precedent, at least one Guam court has held that paralegal fees are recoverable. *Palmer*, Civ. Case No. CV0709-13 (Dec. & Order at 11–12) (citing *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989)). This Court agrees that legal work performed by paralegals, particularly in complex cases, conserves resources and provides valuable contributions to the


ORIGINAL

development of a client's case. The Court treats compensable paralegal work as part of the fee award, not as ordinary clerical overhead.

However, the Court finds that only work involving substantive legal support—including research, analysis, inspections, evidence preparation, and case-related communications—constitutes compensable paralegal activity. Tasks consisting of photocopying, scanning, filing, transcription, binder creation, document organization, and similar ministerial functions, on the other hand, are clerical and therefore non-compensable.

Based on the descriptions in the billing records, the Court finds the following hours to be substantive, compensable paralegal work:

| Paralegal Name | Hours Worked |
| --- | --- |
| Aiesha Castro | 6.00 |
| Carol D. Cabiles | 48.50 |
| Loreal T. Quichocho | 2.00 |
| Mae Fe Muyco | 226.25 |
| Naomi M. Sanchez | 10.25 |
| Nathalie E. Espejo | 37.50 |
| Yna Ysabelle M. Poquiz | 26.00 |
| TOTAL | 356.50 |

Consistent with the Court's reduction of attorney time for limited success, these compensable paralegal hours are reduced by 50%, yielding 178.25 hours.

The Court further finds the $60 hourly rate to be reasonable. Rates as high as $100 have been approved for paralegal work in Guam. *See, e.g., Paeste v. Guam*, 2013 WL6254669 at *6 (D. Guam 2013) ($100 approved for non-legal trained paralegal); *Palmer*, CV0709-13 (Dec. & Order at 14) (approving rates between $110-$125). Therefore, multiplied by the rate of $60 per hour, the award for paralegal work is $10,695.00.

ORIGINAL

## IV.   COSTS DISCUSSION[3]

### A. Process Server Fees

Fees for service of process are taxable. CVR 54.1(b). As with its ruling above, the Court limits such costs to those reasonably tied to successful claims or issues.

1.      Subpoenas for Sept. 15, 2023 Hearing

GLSC utilized a process server to serve four subpoenas for witnesses to appear at the Order to Show Cause/preliminary injunction hearing on September 15, 2023, and paid $350. Joint Decl., Ex. B at 9. The Court issued the Order to Show Cause upon L.A. and G.D.'s motion, and, but for the then-judge's disqualification, the matter would have likely proceeded. The Court awards L.A. and G.D. 50% of the amounts billed, or, $175.00.

2.      Deposition Subpoenas for March 2024

GLSC used a process server to serve subpoenas for the depositions of GDOE Board members and paid $900. Joint Decl., Ex. B at 10. The Court awards L.A. and G.D. 50% of the amounts billed, or $450.00.

3.      Deposition Subpoenas for July 2024

GLSC paid $600 to serve eight subpoenas to public school principals. Joint Decl., Ex. B at 11. The Court awards half of the costs for the subpoenas for the principals of AIJMS and OMS, Dr. Rebecca Perez and Duane Mantanona. That totals $75.00.

4.      Trial Subpoenas for July 31, 2025

---

[3] At the hearing on the motion for fees and costs, the Court commented that it was likely to defer the costs assessment to the Clerk of Court pursuant to CVR 54.1. However, because the Adequate Education Act includes an award of costs to the prevailing party, and because this Court is intimately familiar with the record and the issues in which L.A. and G.D. prevailed, the Court determined to conserve valuable resources and undertake the calculation of costs.

In preparation for the trial on mold, GLSC paid a process server $1,200.00 to serve subpoenas on expected witnesses. Joint Decl., Ex. B at 12. At this stage of the case, all other issues had been resolved except for mold. At the hearing, GDOE conceded that mold was unhealthful, indicating that L.A. and G.D. prevailed on this issue. Therefore, the Court finds L.A. and G.D. are entitled to the full amount of process server fees for this occasion. The Court awards $1,200.00.

### B. Deposition Fees

The Court awards half of the fees incurred to depose GDOE Board members and the principals of AIJMS and OMS. Joint Decl., Ex. B at 13–23. That equates to $2,806.35.

### C. Transcription Fees

Under CVR 54.1(b)(4), reporter's transcript fees are taxable only where the transcript was ordered by the Court or prepared pursuant to stipulation. GLSC used a private court reporter to transcribe a hearing held on August 15, 2024, but did not furnish proof that the proposed cost may be recovered under this Rule.

## V.    CONCLUSION

L.A. and G.D. prevailed on significant issues in this Adequate Education Act litigation and therefore qualify for a discretionary award of reasonable attorneys' fees and costs. The Court awards $276,750.00 in attorneys' fees, $10,695.00 in paralegal fees, $1,900 in process server costs, and $2,806.35 in deposition costs. The total award is $292,151.35.

**SO ORDERED, 1 May 2026.**

**HON. ELYZE M. IRIARTE**
**Judge, Superior Court of Guam**

ORIGINAL

Appearing Attorneys:
Daniel S. Somerfleck, Esq., and Philip Tydingco, Esq., Guam Legal Service Corporation, for
    Plaintiffs
Jesse Nasis, Esq., Matthew E. Wolff, Esq., and Gloria L. Rudolph, Esq., Guam Department of
    Education, for Defendants

ORIGINAL